UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RONALD BATES,

    Plaintiff,

v().

CITY OF CHICAGO,

    Defendant.

No. 05 C 1564
Judge James B. Zagel

# MEMORANDUM OPINION AND ORDER

This case was filed by an African-American firefighter who joined the Chicago Fire Department ("CFD") in 1977. Plaintiff Ronald Bates rose through the ranks to the position of District Chief, an exempt rank member of the CFD, until he was demoted to Deputy District Chief in May, 2004. Bates alleges that his demotion was impermissibly motivated by racial animus. I previously dismissed other counts of the complaint, including Sections 1981 and 1983 claims, the claim for intentional infliction of emotional distress, and all claims against the individual defendants. Defendant City of Chicago moves for summary judgment on Bates's claim for Title VII race discrimination, arguing that Bates cannot establish that (1) similarly situated non-African-American employees were treated more favorably, or (2) the proffered reason for Bates's demotion was pretextual.[1] For the reasons set forth below, Defendant's motion is granted.

---

[1] As a threshold matter, Defendant also argues that Plaintiff's response to the motion for summary judgment should not be considered because Plaintiff deliberately and repeatedly violated the Court's orders. Indeed, Plaintiff's counsel was excessively late in filing its documents, and I ordered counsel to provide an explanation for her tardiness. In response, counsel offered a flimsy excuse that she was involved in preparation for trial in another case. While in no way do I wish to condone this irresponsible lawyering, I do not want an attorney's negligence to prejudice her client. I will consider the motion for summary judgment on its merits.

I.     **FACTUAL BACKGROUND**

The City of Chicago Fire Department is organized into a hierarchy of positions and ranks. Above the district level, the command structure from the top down is as follows: Fire Commissioner, First Deputy Fire Commissioner, Deputy Fire Commissioner, Assistant Deputy Fire Commissioner. Below this structure, the CFD is organized into seven geographical districts, each run by a District Chief. The command structure within each CFD District from top to bottom is as follows: District Chief, Deputy District Chief, Battalion Chief, Captain, Lieutenant, Engineer, Firefighter. All positions above the rank of Battalion Chief are non-career service, or "exempt" positions. The CFD's personnel rules define the non-career exempt employees as at-will employees. They may be disciplined or discharged for any reason or no reason, and neither demotions nor discharges need be for cause.

Bates was an exempt rank member of the CFD until he was reassigned in 2005 following a demotion in 2004. Bates began with the CFD in 1977 as a firefighter and rose through the ranks, attaining the position of District Chief in 2000. He was appointed to District Chief by then-Commissioner James Joyce, a Caucasian.

On May 1, 2004, Cortez Trotter, an African-American, was appointed Commissioner of the CFD. Trotter had also risen through the ranks, beginning as a Fire Paramedic in 1976. As Fire Commissioner, Trotter had the discretion to appoint firefighters to exempt positions, and was authorized to move employees around as he saw fit. On May 24, 2004, Commissioner Trotter issued Personnel Order No. 2004-10, which appointed the exempt ranks under his command. These appointments included the demotion of three African-Americans and five non-African-Americans, the promotion of eight African-Americans and eleven non-African-

Americans, and the lateral reassignment of two African-Americans and two non-African-Americans.

Bates was demoted from District Chief to the rank of Deputy District Chief. Nick Russell, also an African-American, replaced him. Commissioner Trotter appointed three African-Americans to the position of District Chief, thereby increasing the number of African-Americans at that rank. Bates was the only District Chief that was demoted. Among the other demotions were James Connolly, a non-African-American who was moved from Deputy Fire Commissioner to Assistant Deputy Commissioner, and Sal Marquez, a non-African-American, who was demoted from Deputy Fire Commissioner to District Chief.

Trotter states that his personnel decisions were based on his perception of who had high energy and enthusiasm, because those qualities complemented his aggressive management style. He reports that he observed Bates in his official capacity, and Trotter believed that Nick Russell was a better match for District Chief under his administration.

## II. DISCUSSION

### A. Standard of Review

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that

there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).

### B. Race Discrimination in Violation of Title VII

Title VII makes it illegal for an employer "to limit ... [an employee's] employment opportunities ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2). There are two ways of demonstrating a prima facie case of Title VII race discrimination: the direct method and the indirect method. *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). Both parties agree that Bates has no direct evidence of racial animus, and thus cannot proceed under the direct method. Under the indirect method, Bates must establish a prima facie case of discrimination by demonstrating that: (1) he is a member of a protected class, (2) he reasonably performed his job to his employer's expectations, (3) he suffered an adverse employment action, and (4) his employer treated similarly situated employees outside his protected class more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001). If Bates satisfies each of these elements, the burden then shifts to his employer to offer a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802-03. If his employer successfully satisfies this requirement, then the burden shifts back to Bates to prove that his employer's stated reason is a pretext for discrimination. *Id*. at 804.

### C. Similarly Situated Employees

It is undisputed that Bates has established the first three prongs of a prima facie case of racial discrimination. As an African-American, he is a member of a protected class, there are no allegations that Plaintiff performed his job unsatisfactorily, and he was indeed demoted from

4

District Chief to Deputy District Chief in May, 2004. The focus is on the fourth prong, and the City of Chicago argues that Bates cannot show that he was treated less favorably than other similarly situated employees outside of Bates's protected class. *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004).

In order to demonstrate that another employee is similarly situated, Bates must show that there is someone who is directly comparable to him in all material respects. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002). Bates argues that the other District Chiefs in the department are similarly situated to him because the same decision-maker made decisions with respect to all of them, they all had the same supervisors, the same job title, the same job description, the same rank, and were all subject to the same standards. Of the seven District Chiefs, five of which were outside of the protected class, he was the only one who was demoted. This, he argues, satisfies the fourth element of the prima facie case as evidence that he was treated less favorably than the non-African-American District Chiefs. However, in disciplinary cases in which a plaintiff claims that he was disciplined by his employer more harshly than similarly situated employees based on some prohibited reason, a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). Bates has made no showing that he was similarly situated to the non-African American District Chiefs in these ways, other than his conclusory and generalized remarks that they all had the same supervisors and job description. A showing of similarly situated "normally entails" these facts plus some evidence that he and other similarly situated employees "had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of

5

them." *Id.* at 617-18. Bates's failure to make such a showing, on an issue as to which he bears the burden of proof, means that he has not raised a genuine issue of fact as to whether similarly situated non-African American employees were treated more favorably.

**D. Pretext**

Having determined that no reasonable trier of fact could find that Trotter treated similarly situated non-African American employees more favorably than Bates, I need not address whether Trotter's asserted reason for Bates's demotion was a pretext for unlawful discrimination. I note, however, that summary judgment is proper on this basis as well. In response to Bates's claim of discrimination, Trotter testified in his deposition that he was "not impressed" by Bates's "demeanor or enthusiasm." Before making his appointment decision, Commissioner Trotter stated that he observed Bates in his official capacity and felt confident that Bates was not the best match for his aggressive management style. Bates argues that Trotter should have consulted his superiors and examined his record in more detail, but the method behind employment decisions is a matter of discretion for the employer. *See Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998).

In response to the City's non-discriminatory reason for the demotion, Bates alleges that the explanation is merely pretextual. Bates spends considerable time demonstrating his professional merits and accomplishments. This effort is misplaced, however, as Bates's own perception of his aggressiveness and enthusiasm is immaterial. What is at issue is whether the defendant honestly believed its reasons, regardless of whether the reasons are trivial or even baseless. *Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir. 1997). Bates must show that

6

Commissioner Trotter did not actually believe that Bates did not match his aggressive management style. There is no evidence that this is true.

As additional evidence that Trotter's proffered reason - i.e., that he selected Deputy Chiefs whose skills and personality matched his own aggressive management style - is pretextual, Plaintiff asserts that the Commissioner did not demote three other white District Chiefs who had widely publicized problems within their districts. Explaining this decision, Commissioner Trotter stated in his deposition that he found those District Chiefs to have dealt aggressively to correct the problems. Bates offers no evidence that this is untrue.

"When evaluating whether the proffered reasons are pretextual, it is imperative to bear in mind what this pretext is allegedly covering up." *Long v. Am. Med. Ass'n*, No. 03 C 3156, 2004 WL 1088229, at 13 (N.D. Ill. May 14, 2004). In rebutting the given legitimate reason, the plaintiff must show that the actual reason was impermissibly based on his or her protected status. *Id.* Thus, Bates must present something that would allow an inference of racial animus on the part of Commissioner Trotter or the City. This he has not done.

Perhaps Bates's largest hurdle is the fact that both Commissioner Trotter and Nick Russell, Bates's replacement, are also African-American. In *Maiter v. Harris Bank Corp.*, this district held that, absent other evidence, the fact that both the employer and the discharged employee were female weighed against an inference of gender animus. *Maiter v. Harris Bank Corp.*, No. 02-6442, 2004 WL 419910, at *9 (N.D. Ill. Feb. 2, 2004) (*citing Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 744-745 (7th Cir. 1999)). Moreover, this district has pointed out that when the appointee or replacement is in the same protected class as the plaintiff, this further weakens the claim of discrimination. *Rooks v. Girl Scouts of Chicago*, No. 95-206, 1995 WL

562126, at *7 (N.D. Ill. Sept. 21, 1995). The fact that Bates, his replacement, and Commissioner Trotter are all members of the same protected class, coupled with the fact that the Personnel Order actually increased the number of African-American District Chiefs, severely weakens Bates's assertion that Trotter's reason is pretextual.

## IV. CONCLUSION

I find no dispute of material fact on Bates's claim of Title VII race discrimination. For the reasons stated above, Bates has not met his burden under the indirect method of establishing discrimination on the basis of race. Not only does he fail to establish a prima facie case, but Defendant City of Chicago has stated a legitimate, nondiscriminatory reason for the demotion, which Bates has not successfully refuted as pretextual. Thus, Defendant's motion for summary judgment is granted.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: September 4, 2008